**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
402 West Broadway, Suite 400
San Diego, CA 92101
Telephone:  (619) 798-2006

**Counsel for Plaintiff and the Proposed Class**

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CHRISTIAN MARQUEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BEEKEEPER'S NATURALS USA, INC.,<br><br>Defendant. | Case No.<br>Pleading Type: Class Action<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>**THE UNFAIR COMPETITION LAW, THE FALSE ADVERTISING LAW, AND THE CONSUMER LEGAL REMEDIES ACT**<br><br>**No Jury Demand** |

## TABLE OF CONTENTS

I.  JURISDICTION AND VENUE ......................................................................... 1

II.  NATURE OF THE ACTION............................................................................. 1

III.  PARTIES ........................................................................................................... 3

IV.  REGULATORY BACKGROUND ................................................................... 3

V.  THE SALE OF UNAPPROVED DRUGS HARMS THE PUBLIC. .............. 4

VI.  PROPOLIS CANNOT BE STANDARDIZED, RENDERING ANY "CLINICAL RESEARCH" UNRELIABLE........................................................ 5

VII.  PROPOLIS PRODUCTS CAN CONTAIN DANGEROUS CONTAMINANTS. .......................................................................................... 7

VIII.  KIDS COUGH SYRUP'S SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS, AND DRUG CLAIMS. .................................... 9

IX.  KIDS COUGH SYRUP IS AN UNAPPROVED NEW DRUG. .................. 13

X.  DEFENDANT'S PRACTICES WERE "UNFAIR" WITHIN THE MEANING OF THE UNFAIR COMPETITION LAW................................. 15

XI.  DEFENDANT'S PRACTICES WERE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW. ..... 15

XII.  PLAINTIFF'S PURCHASE OF KIDS COUGH SYRUP ............................ 17

XIII.  RELIANCE AND INJURY ............................................................................ 18

XIV.  CLASS ACTION ALLEGATIONS ............................................................... 18

CAUSES OF ACTION ................................................................................................. 21

FIRST CAUSE OF ACTION ....................................................................................... 21

SECOND CAUSE OF ACTION ................................................................................... 22

THIRD CAUSE OF ACTION ....................................................................................... 23

FOURTH CAUSE OF ACTION ................................................................................... 23

FIFTH CAUSE OF ACTION ........................................................................................ 24

PRAYER FOR RELIEF ................................................................................................ 25

NO JURY DEMAND .................................................................................................... 26

*Marquez v. Beekeeper's Naturals USA, Inc.*
CLASS ACTION COMPLAINT

Plaintiff Christian Marquez, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant Beekeeper's Naturals USA, Inc. ("BN" or "Defendant") and upon information and belief and investigation of counsel, alleges as follows:

## I.    JURISDICTION AND VENUE

1.    Jurisdiction in federal court is proper under the Class Action Fairness Act because the amount in controversy exceeds $5 million and more than 2/3 of the proposed class resides in states other than that where Defendant is a citizen.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff Christian Marquez and hundreds of thousands of class members in this District and suffered injuries as a result of Defendant's conduct in this District; many of the acts and transactions giving rise to this action occurred in this District; and Defendant Beekeeper's Naturals USA, Inc. (1) is authorized to conduct business in this District, and has intentionally availed itself of the laws and markets of this District through the distribution and sale of its products in this District; and (2) is subject to personal jurisdiction in this District.

## II.    NATURE OF THE ACTION

3.    During the class period, BN marketed, distributed, and sold Beekeeper's Naturals Kids Propolis Cough Syrup ("Kids Cough Syrup"). Defendant claims that Kids Cough Syrup is an "immune supporting elixir" and "cough syrup" that "soothes dry coughs," "promotes recovery to help get your little ones back on their feet," and can "ease symptoms an improve overall recovery." Defendant further claims that the product can "combat free radical damage in the body" and "help fight germs and support your health."

*Marquez v. Beekeeper's Naturals USA, Inc.*
CLASS ACTION COMPLAINT



4.	These claims were misleading, as Kids Cough Syrup is not a safe and effective treatment for coughs or sore throats.

5.	Further, BN aggressively markets and sells Kids Cough Syrup deceptive efficacy claims which suggest the product has medical benefits akin to prescription cough medicine.

6.	These claims are prohibited by the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), and subject any individual manufacturing or selling it to liability for the sale of an unapproved new drug.

7.	Defendant's representations mislead consumers into believing that Kids Cough Syrup is legal, safe, and effective for its intended purposes.

8.	Plaintiff Christian Marquez purchased Kids Cough Syrup (1) in reliance on Defendant's deceptive efficacy claims (2) with the belief that the product was safe, (3) was effective, and (4) was sold in compliance with state and federal regulations.

9.	Mr. Marquez's family used Kids Cough Syrup as directed, but the product failed to deliver the advertised benefits, nor any results at all.

*Marquez v. Beekeeper's Naturals USA, Inc.*
CLASS ACTION COMPLAINT

10. This action is brought to remedy Defendant's fraudulent, unfair, and unlawful conduct. On behalf of the class defined herein, Plaintiff seeks an order compelling BN to, *inter alia*: (1) cease marketing and selling Kids Cough Syrup as an illegal unapproved new drug; (2) conduct a corrective advertising campaign; (3) destroy all unlawful products and labeling; (4) award Plaintiff and the Class members restitution and damages; and (5) pay costs, expenses, and attorney fees.

## III. PARTIES

11. Defendant Beekeeper's Naturals USA, Inc. is a Delaware corporation with its principal place of business in Covina, California.

12. During the class period, BN owned, manufactured, marketed, distributed, and sold Kids Cough Syrup. Defendant marketed Kids Cough Syrup with illegal drug claims that deceptively promised prescription cough medication effects. In truth, the product was not safe and effective for its intended uses.

13. Plaintiff Christian Marquez is a citizen and resident of California who purchased Kids Cough Syrup during the class period for household consumption.

## IV. REGULATORY BACKGROUND

14. "The term 'drug' means . . . (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1).

15. A "new drug" is any drug "not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof . . . ." 21 U.S.C. § 321(p)(1).

16. Pursuant to 21 U.S.C § 355(a), "No person shall introduce or deliver for introduction into interstate commerce any new drug . . ." without approval by the FDA.

17. Further, 21 U.S.C. § 331(a) prohibits the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded."

18. Under 21 U.S.C. § 352(f), drugs are required to have adequate instructions for safe use.

## V.    THE SALE OF UNAPPROVED DRUGS HARMS THE PUBLIC.

19. "Unapproved prescription drugs pose significant risks to patients because they have not been reviewed by FDA for safety, effectiveness or quality."[1]

20. "Without FDA review, there is no way to know if these drugs are safe and effective for their intended use, whether they are manufactured in a way that ensures consistent drug quality or whether their label is complete and accurate." *Id.*

21. "Unapproved drugs have resulted in patient harm, and the [FDA] works to protect patients from the risks posed by these drugs." *Id.*

22. Unapproved drugs lack "labels and prescribing information that has" "been reviewed by FDA for accuracy and completeness."[2]

23. Consumers using unapproved drugs run the risk of "unexpected and undocumented safety concerns due to lack of rigorous pre- and postmarket safety surveillance." *Id.*

24. Additionally, unapproved drugs lead consumers in need of medical treatment to forego medically proven therapies.

---

[1] U.S. Food & Drug Admin., Unapproved Drugs (June 2, 2021), available at www.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs.

[2] U.S. Food & Drug Admin., Unapproved Drugs and Patient Harm (June 2, 2021), www.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs-and-patient-harm.

## VI. PROPOLIS CANNOT BE STANDARDIZED, RENDERING ANY "CLINICAL RESEARCH" UNRELIABLE.

25. On the packaging of Kids Cough Syrup, BN claims that the product is a "propolis cough syrup."

26. On its website, BN claims that "Propolis is the defender of the hive—and your immune system, delivering antioxidants like flavonoids & polyphenols to help fight germs."

27. Defendant further claims that propolis can "support our immune systems, soothe scratchy throats, and combat free radical damage in the body."

28. However, these claims are misleading, as propolis cannot be standardized such that any clinical research purportedly demonstrating its efficacy or safety is unreliable.

29. "Propolis, referred to as bee glue, is produced by bees in the construction and maintenance of their hives. Bees produce propolis using a combination of beeswax and saliva, where it acts as the defence mechanism for the hive."[3]

30. "Propolis can be found in tropical and subtropical forests throughout the world. The composition of phytochemical constituents in propolis varies depending on the bee species, geographical location, botanical source, and environmental conditions."[4]

31. Thus, a sample of propolis from Brazil may contain entirely different chemical compounds than one from Europe or Asia. *Id.*

32. Being "a naturally occurring material," propolis "lacks a consistent and repeatable chemical makeup. As a result, identifying its complete makeup in a trustworthy manner presents a significant research challenge."[5]

---

[3] Braakhuis A. *Evidence on the Health Benefits of Supplemental Propolis*. Nutrients. 2019 Nov 8;11(11):2705. doi: 10.3390/nu11112705. PMID: 31717277

[4] Zullkiflee N, Taha H, Usman A. *Propolis: Its Role and Efficacy in Human Health and Diseases*. Molecules. 2022 Sep 19;27(18):6120. doi: 10.3390/molecules27186120. PMID: 36144852

[5] Marinotti, S. et al. *Propolis: A Natural Substance with Multifaceted Properties and Activities*. 26 J. Mol. Sci. (2025).

*Marquez v. Beekeeper's Naturals USA, Inc.*
CLASS ACTION COMPLAINT

33.    The "great diversity of propolis products and different types make the standardization of realistic quality control procedures challenging. Moreover, the extraction of propolis bioactive compounds depends on the technique and the solvent used."[6]

34.    "This happens because propolis is a complex matrix whose characteristics can be changed during collection and processing, which can compromise the quality of the final product." *Id.*

35.    The absence of chemical consistency means that even if some positive effects were demonstrated in specific samples, these findings cannot be generalized to propolis products as a whole. This variability also makes it impossible to establish safe dosing guidelines or predict potential adverse effects

36.    This variability alone disqualifies propolis, absent additional standardization processes, from being accurately and fairly marketed as a health remedy.

37.    Defendant's marketing for Kids Cough Syrup highlights the issue, noting that their "products come from remote apiaries located far from harmful chemicals, including locations in Canada, Europe, and South America."

38.    This claim is deceptive in another way: bee products can contain toxic chemicals in remote and pristinely uncontaminated environments. For example, bees in New Zealand feed on insects that in turn feed on the tutu plant (Coriaria arborea). The tutu plant contains tutin, which is not toxic to most insects but is a potent neurotoxin in mammals.[7]

---

[6] Contieri, L. et al. *Standardization proposal to quality control of propolis extracts commercialized in Brazil : A fingerprinting methodology using UHPLC-PDA-MS/MS approach.* 161 Food Research International (November 2022).

[7] Beasley M, et al, *Poisoning due to tutin in honey-a report of an outbreak in New Zealand.* NZ Med J. 2018 Apr 13;131(1473):59-71. PMID: 29649198; and Larsen L, et al, *Sweet Poisons: Honeys Contaminated with Glycosides of the Neurotoxin Tutin.* J Nat Prod. 2015 Jun 26;78(6):1363-9. doi:10.1021/acs.jnatprod.5b00241. Epub 2015 May 21. PMID: 25993882.

*Marquez v. Beekeeper's Naturals USA, Inc.*
CLASS ACTION COMPLAINT

39.    As noted by Robert Saper, MD, MPH, "[w]hen it comes to propolis, we don't see compelling scientific evidence for its effectiveness. And in nearly all cases, there are other medications and therapies that we know to be much more effective."[8]

40.    The Cleveland Clinic advises that "[w]ith plenty of reasons not to try propolis — including negative side effects and possible interactions with medications — this is one trend better left behind." *Id.*

## VII.   PROPOLIS PRODUCTS CAN CONTAIN DANGEROUS CONTAMINANTS.

41.    Additionally, propolis may contain a plethora of dangerous contaminants, including heavy metals and pesticide residues.

42.    "The composition of propolis is very complex, and varies depending to the phytogeographic diversity of the area where it is collected and the specific time of year."[9]

43.    "The presence of toxic elements in propolis is associated with the environmental pollution of anthropic origin around the apiaries via various sources such as air, water, plants and soil. Heavy metals and pesticide residues are among the potentially toxic elements that can be found within propolis." *Id.*

44.    "Various studies have shown the presence of toxic metals in propolis" finding contaminants such as "nickel, cadmium, lead, iron, magnesium and zinc." *Id.*

45.    "[T]oxic metal contents are widely reported in unprocessed propolis." *Id.*

46.    "In addition, pesticide residues are among the other potentially toxic compounds that can be found in propolis, and often originate from contamination produced by agricultural practices and the application of pesticides in hives, such as in the treatment of the varroa mite." *Id.*

---

[8] Cleveland Clinic. Propolis: What Is It and Is It Worth Using? (January 6, 2026), available at www.health.clevelandclinic.org/propolis.

[9] Gonzalez-Martin. *Pesticide residues and heavy metals in commercially processed propolis.* 143 MICROCHEMICAL JOURNAL (December 2018), available at www.sciencedirect.com/science/article/abs/pii/S0026265X18305800.

47.    "Moreover, the number of published reports regarding the presence of pesticides in bee-derived products is ever increasing." *Id.*

48.    A 2018 study "revealed the presence of heavy metals, such as Cr, Ni, Cu, Zn and Pb, and pesticides such as the fungicides triadimefon, procymidone, dichlofluanid, folpet, herbicides like metazachlor" in processed, commercial propolis products. *Id.*

49.    Another study

analysed the presence of Cu, Fe, K, Mg, Na, Zn, As, Cd, As, Cd, Pb, and Cr metals in ten Brazilian geopropolis samples from the state of Santa Catarina. The results indicated that the presence of different amounts of minerals could attribute a specific geographic location of each geopropolis and also inform the environmental quality of the soil surrounding the beehive[10]

50.    A 2020 study noted that

In a general way, the raw propolis samples had different ranges in the mineral composition. For being constituted basically by a resinous hive substance containing beeswax, plant exudates, and salivary secretions from bees, the propolis can be contaminated by metals by different sources such as bees, air, water, plants, and soil. Propolis contamination by soil and plants are closely related since soil-plant transfer of metals is controlled by numerous factors related to plant physiology, such as plant type, rate and type of root secretions, root surface area and transpiration, and soil properties, such as texture, pH, and cation exchange capacity. The presence of metals in bees is associated with the direct deposit of toxic metals present in the atmosphere on the hairy body of the bees or can reach the insect by the nectar, the pollen, the honeydew, or through the water during foraging.

*Id.*

51.    The study's "results showed that detectable levels of Cu and K were observed in all samples and As, Cd, Pb, and Se in 26.3%, 5.2%, 73.9%, and 57.9% of the samples, respectively." *Id.*

---

[10] Hodel KVS, Machado BAS, Santos NR, Costa RG, Menezes-Filho JA, Umsza-Guez MA. *Metal Content of Nutritional and Toxic Value in Different Types of Brazilian Propolis.* ScientificWorldJournal. 2020 Jan 22;2020.

## VIII. <u>KIDS COUGH SYRUP'S SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS, AND DRUG CLAIMS.</u>

### A. Kids Cough Syrup's Packaging

52. During the class period, BN marketed Kids Cough Syrup with deceptive efficacy claims that suggest that the product can affect the structure or function of the human body by treating coughs and related symptoms, combatting free radicals, and fighting germs and to treat coughs and colds.

53. These claims are misleading, as none of the ingredients in Kids Cough Syrup, either individually or in combination, can safely and effectively treat coughs and related symptoms, combat free radicals, or fight germs.

54. These claims also render Kids Cough Syrup a "drug" within the meaning of 21 U.S.C. § 321(g).

55. However, BN failed to obtain FDA approval to market and distribute Kids Cough Syrup in violation 21 U.S.C. § 355 and Health & Safety Code § 111550.

56. The packaging of Kids Cough Syrup is reproduced on the following pages.






*Marquez v. Beekeeper's Naturals USA, Inc.*
CLASS ACTION COMPLAINT






*Marquez v. Beekeeper's Naturals USA, Inc.*
CLASS ACTION COMPLAINT

57.     During the Class Period, the "Kids Cough Syrup" label claimed that the product is a "cough syrup" which "soothes dry coughs," "soothes throats" and "helps them bounce back."

58.     Kids Cough Syrup does not deliver the advertised benefits because it is not a safe and effective treatment for coughs and sore throats in children.

59.     These efficacy claims, in addition to being misleading, render original Kids Cough Syrup a "drug" as defined by 21 U.S.C. § 321(g).

**B.     BN's Web and Amazon Pages for Kids Cough Syrup**

60.     BN advertises Kids Cough Syrup with further deceptive efficacy claims online that suggest the product can provide prescription cough drug benefits.

61.     The Kids Cough Syrup label, Defendant's website, beekeepersnaturals.com, and the Kids Cough Syrup Amazon page, which BN controls, contained the following claims, which show that the product is intended to affect the structure and function of the body, and to cure, mitigate, treat, or prevent disease, during the Class Period:

- "Cough Syrup"
- "Immune Supporting Elixir"
- "combat free radical damage in the body"
- "soothes dry coughs"
- "promotes recovery to help get your little ones back on their feet"
- "ease symptoms and improve overall recovery"
- "daytime cough syrup"
- "While most cough syrups don't actively support immune health, ours features elderberry, one of the most well-known medicinal plants for promoting immune health through vitamins and antioxidants."
- "Propolis is the defender of the hive—and your immune system, delivering antioxidants like flavonoids & polyphenols to help fight germs and support your health."
- "this potent blend soothes the immune system"
- "get your little ones get back on their feet"

62.    These claims suggest Kids Cough Syrup can treat coughs and sore throats and can affect the structure or function of the human body alleviating coughs and related symptoms, combatting free radicals, and fighting germs.

63.    Further, these claims render Kids Cough Syrup a "drug" within the meaning of 21 U.S.C. § 321(g)(1).

64.    True and correct copies of screenshots of the Kids Cough Syrup pages from Defendant's website, BN.com, are attached hereto as **Exhibit 1.**

65.    True and correct copies of screenshots of the Amazon pages for Kids Cough Syrup, which BN controls, are attached hereto as **Exhibit 2**.

66.    BN failed to obtain FDA approval prior to marketing, distributing, and selling Kids Cough Syrup.

## IX.    KIDS COUGH SYRUP IS AN UNAPPROVED NEW DRUG.

67.    "The term 'drug' means . . . (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1).

68.    Kids Cough Syrup is a "drug" because it is advertised as a product which will affect the structure or function of the body and cure, mitigate, treat, or prevent disease.

69.    The claims on the packaging of Kids Cough Syrup, BN's website, and BN's Amazon page for Kids Cough Syrup render the product an unapproved new drug.

70.    The FDA has determined that the following claims, which are similar to those Defendant made regarding Kids Cough Syrup constitute "drug claims":

"This cough syrup is a dietary supplement which has a generous mix of honey, ginger and Aloe Vera that can be safely consumed by kids and will leave their throats clear, will alleviate digestive inflammation and can diminish severe coughing" (**Exhibit 3**, FDA Warning Letter to Natural Ginger Corp./Jonaus Corp.)

- "a millenary soother for sore throats for its various antimicrobial properties" (**Exhibit 3**)

- "known for being the perfect cure for children's common colds as it stops acute coughing and has potent anti-bacterial properties that will prevent the re-growth of microorganisms" (**Exhibit 3**)
- "ALLEVIATES SORE THROATS: Naturgin has a generous amount of honey which will quickly reduce inflammation" (**Exhibit 3**);
- "Baby Cold & Flu" (**Exhibit 4**, FDA Warning Letter to Herb Vitality, Inc.);
- "The herbs in this formula are antimicrobial" (**Exhibit 4**);
- "broad antimicrobial effects along with lymphagogue actions that cleanse the tissues and strengthen immunity" (**Exhibit 4**)

71.     A "new drug" is any drug "not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof . . . ." 21 U.S.C. § 321(p)(1). Here, Kids Cough Syrup is a "new drug" within the meaning of the FDCA because it is not generally recognized as safe and effective for the intended uses. See Title 21 of the Code of Federal Regulations, Chapter I, Subchapter D; 21 C.F.R. § 330.1.

72.     Defendant has not received approval from the FDA to sell Kids Cough Syrup.

73.     The sale of unapproved new drugs is illegal and dangerous. First, consumers risk purchasing and using a product that will endanger their health. Second, consumers risk purchasing a product that will not effectively treat their condition, forgoing actual treatment of that condition in lieu of an unapproved new drug which may not treat their condition. The FDA's regulatory regimen helps ensure that such products are kept away from consumers.

74.     Defendant's failure to comply with these regulations puts consumers at risk and gives BN an unfair advantage over competitors that do commit the time and expense of complying with such necessary regulations.

75.     Kids Cough Syrup does not qualify for the reduced level of regulation applicable to certain nutrition supplement products for several reasons. The Kids Cough Syrup label, BN's website, and BN's marketing materials neither describe the role of any nutrient or dietary ingredient intended to affect the structure or function in humans,

14

characterize the documented mechanism by which any nutrient or dietary ingredient acts to maintain such structure or function, nor describe general well-being from consumption of any nutrient or dietary ingredient. 21 U.S.C. § 343(r)(6)(A).

76.    California similarly prohibits the sale of unapproved new drugs. Health & Safety Code § 111550.

## X.    DEFENDANT'S PRACTICES WERE "UNFAIR" WITHIN THE MEANING OF THE UNFAIR COMPETITION LAW.

77.    Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because BN's conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of this conduct to Defendant does not outweigh the gravity of the harm to Defendant's victims.

78.    In particular, while Defendant's marketing of Kids Cough Syrup with deceptive efficacy and "drug" claims as defined by 21 U.S.C. § 321(g) and absent FDA approval to do so allowed BN to realize higher profit margins than if it did not use unlawful marketing tactics, this utility is small and far outweighed by the gravity of the economic harm and potential physical harm that Defendant inflicts upon consumers. Further, the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not an injury that consumers themselves could reasonably have avoided.

## XI.    DEFENDANT'S PRACTICES WERE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW.

79.    Defendant's practices as described herein are "unlawful" within the meaning of the California Unfair Competition Law because the marketing, sale, and distribution Kids Cough Syrup violate the California's Sherman Food, Drug, and Cosmetic Law, including federal provisions that have been adopted by California

- **Health & Safety Code § 110100 *et seq.*,** which adopts all FDA labeling regulations as state regulations;

- **Health & Safety Code § 111330**, "Any drug or device is misbranded if its labeling is false or misleading in any particular.";

- **Health & Safety Code § 110398**, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.";

- **Health & Safety Code § 111440**, "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is misbranded.";

- **Health & Safety Code § 111445**, "It is unlawful for any person to misbrand any drug or device.";

- **Health & Safety Code § 111450**, "It is unlawful for any person to receive in commerce any drug or device that is misbranded or to deliver or proffer for delivery any drug or device.";

- **Health & Safety Code § 111550**, prohibiting sale of new drugs unless approved under 21 U.S.C. § 355;

- **21 U.S.C. § 331(a)**, prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded";

- **21 U.S.C. § 331(b)**, prohibiting the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce";

- **21 U.S.C. § 352(f)(1)**, requiring drugs to have adequate directions for use;

- **21 U.S.C. § 355(a)**, prohibiting the sale of unapproved new drugs; and

80.    The fraudulent marketing and advertising of Kids Cough Syrup also violates the CLRA and False Advertising Law and further constitutes a violation of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

81.    Defendant's unlawful acts allowed it to sell more units of Kids Cough Syrup than it would have otherwise, and at a higher price and higher margin.

82.     In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and requiring Defendant to commence a corrective advertising campaign.

83.    Plaintiff also seeks an order for the disgorgement and restitution of all revenue received by Defendant from the sale of Kids Cough Syrup and has no adequate remedy at law.

84.    BN's unlawful and deceptive marketing and advertising of Kids Cough Syrup constitutes a violation of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

85.    Defendant's unlawful acts allowed it to sell more units of Kids Cough Syrup than it would have otherwise, and at a higher price and higher margin.

86.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

87.    Plaintiff also seeks an order for the disgorgement and restitution of all revenue received by Defendant from the sale of Kids Cough Syrup.

## XII.    PLAINTIFF'S PURCHASE OF KIDS COUGH SYRUP

88.    Plaintiff Christian Marquez repeatedly purchased Kids Cough Syrup for household use from Clarks Nutrition & Naturals Foods and Target locations in Riverside. He purchased the product approximately 3-4 times, and all of his purchases were in 2025.

89.    In deciding to purchase Kids Cough Syrup, Plaintiff relied on Defendant's deceptive safety and efficacy representations and fraudulent omissions.

90.    Plaintiff used Kids Cough Syrup as directed, but the product failed to deliver the advertised benefits, nor any results at all.

91.    Because Plaintiff expected these statements to be true and honest, but they were not, he did not receive the benefit of his purchase.

## XIII. RELIANCE AND INJURY

92.    Plaintiff purchased and used Kids Cough Syrup in reliance on Defendant's deceptive safety and efficacy representations described herein and would not have purchased the product absent Defendant's deceptive advertising.

93.    When Plaintiff purchased Kids Cough Syrup, he was seeking a safe and effective product which would treat coughs and sore throats in children, fight germs, and reduce the severity of coughs and related symptoms.

94.    Plaintiff purchased Kids Cough Syrup with the natural assumption that products sold in stores and online by large companies would be safe, would deliver the advertised benefits, and would be sold in compliance with FDA regulations and California law.

95.    Plaintiff suffered economic injury when he purchased Kids Cough Syrup because the product was not safe and effective for its intended purposes and was in violation of federal regulations and California law.

96.    Plaintiff would not have purchased Kids Cough Syrup had he known that it was  not safe and effective for its intended purposes and was sold in violation of federal regulations and California law

97.    Kids Cough Syrup was offered for sale in violation of California and federal law and had a value of $0 because it is illegal, unsafe, and ineffective.

98.    Plaintiff would consider purchasing Kids Cough Syrup in the future if he could be assured that the product (1) would deliver the advertised benefits, (2) was safe and effective, and (3) was sold in compliance with all FDA regulations and California law.

## XIV. CLASS ACTION ALLEGATIONS

99.    Plaintiff brings this action on behalf of himself and all others similarly situated (the "Class"), excluding Defendant's officers, directors, and employees, and the Court, its officers and their families. The Class is defined as:

All residents of the United States who purchased Kids Cough Syrup in the United

States for their own personal or household use, and not for resale, from January 1, 2019 to the present.

100. Questions of law and fact common to Plaintiff and the Class include:

   a. Whether Defendant's conduct constituted a violation of the unfair prong of California's Unfair Competition Law;

   b. Whether Defendant's conduct constituted a violation of the unlawful prong of California's Unfair Competition Law;

   c. Whether Defendant's conduct constituted a violation of the fraudulent prong of California's Unfair Competition Law;

   d. Whether Defendant's conduct constituted a violation of the CLRA;

   e. Whether Defendant's conduct constituted a violation of the FAL;

   f. Whether BN communicated safety and efficacy messages through Kids Cough Syrup's labeling, packaging, and website

   g. Whether those messages were material, or likely to be material, to a reasonable consumer;

   h. Whether those messages were false, at variance with the truth, misleading, likely to deceive, and/or had the capacity to deceive the public and/or a reasonable consumer;

   i. Whether BN fraudulently omitted material information in advertising Kids Cough Syrup as safe and effective;

   j. Whether BN sold and distributed Kids Cough Syrup to the public in misleading packaging that was likely to deceive the public;

   k. Whether Kids Cough Syrup is an unapproved new drug;

   l. Whether Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers;

   m. Whether the slight utility Defendant realized as a result of its conduct outweighs the gravity of the harm the conduct caused to its victims;

   n. Whether Defendant's conduct violated public policy as declared by specific constitutional, statutory, or regulatory provisions;

   o. Whether the injury to consumers from Defendant's practices is substantial;

p. Whether the injury to consumers from Defendant's practices is outweighed by benefits to consumers or competition;

q. Whether Class members are entitled to restitution;

r. Whether Class members are entitled to damages and/or punitive damages;

s. Whether Class members are entitled to an injunction and, if so, its terms; and

t. Whether Class members are entitled to any further relief.

101. By purchasing Kids Cough Syrup, all Class members were subjected to the same wrongful conduct.

102. Plaintiff's claims are typical of the Class's claims because all Class members were subjected to the same economic harm when they purchased Kids Cough Syrup and suffered economic injury.

103. Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

104. The Class is sufficiently numerous, as it includes thousands of individuals who purchased Kids Cough Syrup during the Class Period.

105. Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small, as little as $11 for some Class members. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

106. Questions of law and fact common to the Class predominate over any questions affecting only individual members.

**CAUSES OF ACTION**

**First Cause of Action**

**Unfair Competition Law, Unlawful Prong**

**Bus. & Prof. Code §§ 17200,** *et seq.*

107. In this and every cause of action, Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

108. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unlawful" business acts and practices in that Defendant's conduct violates the California False Advertising Law, and the California Consumer Legal Remedies Act, as alleged herein.

109. BN leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

110. 103. The fraudulent marketing of Kids Cough Syrup described herein constitutes a violation of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

111. Had Plaintiff known that Kids Cough Syrup was not safe and effective and offered for sale in violation of California and federal regulations, he would not have purchased it.

112. Plaintiff suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: he was denied the benefit of the bargain when he decided to purchase Kids Cough Syrup over competing products, which are safe, effective, legal, less expensive, and do not make misleading or false drug claims on their packaging.

113. Defendant's unlawful acts allowed it to sell more units of Kids Cough Syrup than it would have otherwise, at a higher price, and higher margin.

114. Had Plaintiff been aware of Defendant's false and misleading advertising tactics, he would not have purchased Kids Cough Syrup, and had Defendant not advertised Kids Cough Syrup in a fraudulent manner, Plaintiff would have paid less for it.

115.  In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices, requiring Defendant to commence a corrective advertising campaign, and awarding the class restitution of all monies Defendant obtained from the sale of Kids Cough Syrup. Plaintiff has no adequate remedy at law.

## Second Cause of Action

### Unfair Competition Law, Fraudulent Prong

### Bus. & Prof. Code §§ 17200, *et seq.*

116.  Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

117.  The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices in that Defendant's conduct has a likelihood, capacity or tendency to deceive Plaintiff, the Class, and the general public.

118.  Defendant leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

119.  Plaintiff and class members suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: they were denied the benefit of the bargain when they decided to purchase Kids Cough Syrup over competing products, which are safe, legal, less expensive, and do not make misleading or false drug claims on their packaging and websites.

120.  Had Plaintiff been aware of Defendant's false and misleading advertising tactics, he would not have purchased Kids Cough Syrup, and had Defendant not advertised it in a fraudulent manner, Plaintiff would have paid less for it.

121.  In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising

campaign; and awarding the class restitution of all monies Defendant obtained from the sale of Kids Cough Syrup. Plaintiff has no adequate remedy at law.

## Third Cause of Action

### Unfair Competition Law, Unfair Prong

### Bus. & Prof. Code §§ 17200, *et seq.*

122.  The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unfair" business acts and practices because Defendant's conduct is:

- immoral, unethical, unscrupulous, and offends public policy;
- the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct; and
- the injury to consumers caused by Defendant's conduct is substantial, not outweighed by any countervailing benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

123.  In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; and awarding the class restitution of all monies Defendant obtained from the sale of Kids Cough Syrup. Plaintiff has no adequate remedy at law.

## Fourth Cause of Action

### False Advertising Law

### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

124.  In violation of Cal. Bus. & Prof. Code §§ 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of Kids Cough Syrup without the knowledge that the product makes misleading and unapproved claims.

125.  Defendant knew and reasonably should have known that the claims made on Kids Cough Syrup's label, packaging, and website were untrue and misleading.

126.    As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

127.    Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; awarding Plaintiff and the class restitution of all monies from the sale of Kids Cough Syrup in an amount of $5 million or a greater amount to be proven at trial, actual and punitive damages, and interest to Plaintiff, an incentive award to Plaintiff in conjunction with a class award or injunction, and for attorney fees and costs to be awarded by the Court in accordance with applicable law, including the Private Attorney General Statute.

## Fifth Cause of Action

### Consumer Legal Remedies Act

### Civil Code §§ 1750, *et seq*.

128.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

129.    Defendant's policies, acts and practices were designed to, and did, result in the purchase and use of Kids Cough Syrup for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

- **Civil Code § 1770(a)(5),** representing that goods have characteristics, uses, or benefits which they do not have;

- **Civil Code § 1770(a)(7),** representing that goods are of a particular standard, quality, or grade if they are of another;

- **Civil Code § 1770(a)(9)**, advertising goods with intent not to sell them as advertised; and

- **Civil Code § 1770(a)(16),** representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

130.   As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

131.   As a further result, Plaintiff and the Class have suffered damages, and because the conduct was deliberate, immoral, oppressive, made with malice and contrary to public policy, they are entitled to punitive or exemplary damages.

132.   Pursuant to section 1782 *et seq.* of the CLRA, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act as to Kids Cough Syrup and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

133.   Defendant received Plaintiff's written notice.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendant as follows:

a)   An order confirming that this class action is properly maintainable as a class action as defined above, appointing Plaintiff Chirstian Marquez and his undersigned counsel to represent the Class, and requiring Defendant to bear the cost of class notice;

b)   An order requiring Defendant to pay $1,000 in restitution, damages, punitive damages, and interest to Plaintiff;

c)   An order requiring Defendant to pay $5 million or a greater amount to be proven at trial in restitution, damages, and punitive damages to Class members, and $15,000 to Plaintiff as an incentive award, or such greater amount the Court deems fair and reasonable;

d)   An order requiring Defendant to disgorge any benefits received from Plaintiff and its unjust enrichment realized as a result of its improper and misleading advertising, marketing, sale, and distribution of Kids Cough Syrup.

e) An order declaring the conduct complained of herein violates the Unfair Competition Law;

f) An order requiring Defendant to cease and desist its deceptive, unconscionable, fraudulent, and unlawful practices;

g) An order requiring Defendant to engage in a corrective advertising campaign;

h) A temporary and permanent injunction prohibiting the conduct described in the Complaint;

i) An award of prejudgment and post judgment interest;

j) An award of attorney fees and costs of $500,000, or such greater amount the Court awards as fair and reasonable; and

k) Such other and further relief as this Court may deem just, equitable or proper.

## <u>NO JURY DEMAND</u>

Plaintiff does not demand a jury trial.

DATED: March 30, 2026                              Respectfully Submitted,

<u>s/ Gregory S. Weston</u>
**THE WESTON FIRM**
GREGORY S. WESTON

<u>**Counsel for Plaintiff and the Proposed Class**</u>